In the Matter of the Estate of PETER V. MEAHL, Deceased.

WILLIAM H. MEAHL, as Administrator with the Will Annexed of PETER V. MEAHL, Deceased, Appellant; POWER CITY TRUST COMPANY, Executor, etc., of MARY ELIZABETH PFETSCH, Deceased, Respondent.

Fourth Department, May 9, 1934.

*Watts & Findlay* [*Bernard Sax* of counsel], for the appellant.

*Parker & Parker* [*Alan V. Parker* of counsel], for the respondent.

LEWIS, J. Two paragraphs of the will of Peter V. Meahl are before us for construction:

" *Second.* All my property, personal and real, my wife, Elizabeth Meahl, shall have the use of, control, etc., receive all rents and monies whatsoever accrueing therefrom for the term of her natural life for her support.

" *Third.* After the death of Elizabeth Meahl, all property, personal and real, shall be equally divided between Mary E. Kledehn, my daughter, and William H. Meahl, my son, or their heirs, next of kin of Mary E. Kledehn and William H. Meahl."

When the life tenancy of Elizabeth Meahl was terminated by her death, her married daughter, Mary E. Kledehn Pfetsch, had

predeceased her, leaving a will by which the Power City Trust Company, the petitioner-respondent herein, was named as executor. Surviving the daughter was her husband, Michael Pfetsch, and her brother, William H. Meahl, who is one of the remaindermen named in the third paragraph of the will and is the appellant in this proceeding.

The appellant contends the division and vesting of the residuary estate were postponed until the death of the life tenant, Elizabeth Meahl. If so, because of the fact that Mary E. Kledehn Pfetsch predeceased the life tenant, the appellant will take the entire residuary. The respondent contends that the legacies comprising the residuary estate vested in the remaindermen immediately upon the death of the testator, Peter V. Meahl, subject to .the life use thereof by the testator's widow. If so, the residuary estate must be divided equally between the respondent as executor of the will of Mary E. Kledehn Pfetsch, and her brother, the appellant.

The learned surrogate has ruled that the residuary estate vested in the remaindermen immediately upon the death of the testator, Peter V. Meahl, and that the language employed in those paragraphs of the will here to be construed served only to postpone the enjoyment by* the remaindermen of such residue during the life tenancy of the testator's widow.

We do not so construe the will. While we are mindful of the rule of law which favors the early vesting of legacies, that principle must yield to the more basic rule that the intention of the testator as expressed in the will must prevail if it can be ascertained with reasonable certainty. (*Dougherty* v. *Thompson*, 167 N. Y. 472, 483.) " The question is one of intention to be gathered from the whole will, with context and cognate gifts shedding light upon the meaning." (*Matter of Evans*, 234 N. Y. 42, 45.)

In the instant case, after directing the payment of his debts, the testator made provision for his wife, to whom he gave a life use of his entire estate. No words of gift were used to indicate the final vesting of the residuary estate until the third paragraph of the will. There we find the time fixed when the division was to be made — not upon the death of the testator, but "After the death of Elizabeth Meahl " (the life tenant).

" One of the subordinate rules [of construction] is that when the only gift is found in the direction to pay or distribute at a future time, the gift is future and not immediate; contingent, but not vested. Its reason is plain; the direction has no reference to the present, and can be executed only in the future, and if in the meantime the donee indicated shall die, the direction cannot be executed at all." (*Dougherty* v. *Thompson, supra*, p. 483.)

We find an intent by the testator to postpone the time of final vesting of the residuary estate until the time fixed for distribution of the property which was the termination of the life tenancy by his wife's death. " ' Futurity is annexed to the substance of the gift.' " (*Matter of Buechner*, 226 N. Y. 440, 443.)

" The rule is well settled that where there is no gift but by a direction to pay or divide at a future time, the vesting in the beneficiary will not take place until the time arrives. (*Warner* v. *Durant*, 76 N. Y. 133; *Smith* v. *Edwards*, 88 id. 92, 104; *Teed* v. *Morton*, 60 id. 506; *Dickerson* v. *Sheehy*, 156 App. Div. 101; affd., 209 N. Y. 592.) As futurity is annexed to the substance of the gift, none can take except those designated by the will as qualified to take at the time of the division." (*Bryer* v. *Finnen*, 178 App. Div. 671, 672.) (See, also, *Matter of Buechner, supra; Lyons* v. *Ostrander*, 167 N. Y. 135.)

After fixing the time when the residuary estate should be distributed, the testator provided that it should then be divided equally between his daughter and son, " *or* their heirs, next of kin." It has been said that " in the natural and ordinary meaning of words, a substitutional or alternative gift is expressed by the disjunctive ' or ' or by ' and ' justifiably, under its context, construed to mean ' or.' " (*Matter of Tamargo*, 220 N. Y. 225, 229.)

In the setting in which we find it in the third paragraph, we interpret " or " as a word of substitution whereby the testator intended to provide that if either his daughter or son or both should not survive his wife, then upon the latter's death, when his estate should be divided, the heirs or next of kin of either or both his children should be substituted as beneficiaries. It is our understanding that the estate of the testator was entirely personalty. Accordingly we must construe the word " heirs " to mean next of kin. " ' Heirs ' may be read as ' next of kin ' when the subject-matter of the succession is personal estate." (*Matter of Evans, supra*, p. 45.) As the husband of Mary E. Kledehn Pfetsch cannot be included as next of kin (*Matter of Devoe*, 171 N. Y. 281; *Matter of Evans, supra; Matter of Finck*, 168 App. Div. 135), it follows he is not a donee.

We have not overlooked the ruling in *Miller* v. *Gilbert* (144 N. Y. 68), cited by the respondent. It will be found, as suggested in *Matter of Evans* (*supra*, p. 47), that the *Miller* case is to be distinguished by its special features. In his opinion in the latter case Judge BARTLETT points to the significance of the phrase " revert back " which is used by the testator in such a way as to indicate the time when the title to certain property vested. Such a token of intention is not present in the case now before us.

The decree from which appeal is taken should be so modified as to provide that the residuary estate did not finally vest until the death of the life tenant, Elizabeth Meahl, at which time, Mary E. Kledehn Pfetsch having predeceased the life tenant, the entire residuary estate vested in William H. Meahl.

Costs are awarded to appellant payable out of the estate.

All concur, except THOMPSON, J., who dissents and votes for affirmance.

Decree modified on the law in accordance with the opinion and as modified affirmed, with costs to appellant payable out of the estate.